MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD MOORE, et al., | ) |
| | ) Case No. 07 C 5606 |
| Plaintiffs, | ) |
| | ) |
| v. | ) Judge Suzanne Conlon |
| | ) Magistrate Judge Arlander Keys |
| MORGAN STANLEY & CO., INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, fourteen African-American individuals - Ronald Moore, Morris Allen, Jr., Michael Barnett, Anthony Bell, Patrick Carter, Martin Dixon, Ernest Dorsey, Mary Evans, Janice Grant, Justin Harris, Mark Lewers, Maurice Mabon, Brian Roy, and Marion Tucker - sued Morgan Stanley alleging that the company discriminated against them on the basis of race. Thirteen of the plaintiffs worked for Morgan Stanley (the majority as Financial Advisors, but one as a Financial Advisor Trainee and one as a Financial Advisor/Sales Manager); they allege that they were either fired, constructively discharged, denied business opportunities or treated worse than their non-African-American colleagues. The remaining plaintiff alleges that he applied for a Financial Advisor Trainee position and was not hired because of his race.

The case was initially brought on behalf of the named

plaintiffs and all other similarly-situated individuals. But
Morgan Stanley moved to dismiss or stay the class allegations
because of a duplicative case, *Jaffe, et al. v. Morgan Stanley*,
pending in the Northern District of California; all but two of
the plaintiffs in this case would be members of the class in
*Jaffe*.[1] Judge Conlon, the district judge to whom the case is
assigned, agreed that the case was duplicative to *Jaffe*, but
decided to stay the case, rather than dismiss it outright,
because dismissal could adversely affect the rights of the two
litigants who would not be members of the *Jaffe* class.

On January 31, 2008, Judge Conlon vacated the stay with
respect to the plaintiffs' individual claims, and set a discovery
schedule thereon. The plaintiffs had previously served
"Plaintiffs' First Set of Class Requests for Production," and,
after Judge Conlon gave the green light to discovery on the
individual claims, the plaintiffs advised Morgan Stanley that it
should consider the prior discovery requests to be applicable to
all 14 individual plaintiffs' claims. Among other things, the
plaintiffs sought:

> all data maintained in computer-readable form by Morgan
> Stanley [at the national level, as well as the branch
> or district level] for every Financial Advisor, FA
> Trainee, and Producing Manager employed by Morgan

---

[1]These plaintiffs all opted out of the class and the time to
rescind that opt-out has now passed.

Stanley at any time during the years 2001 to the
present, including data sufficient to demonstrate the
[employee's name; social security number; sex; race;
date of birth; employment history; date of termination
(if applicable); reason for termination; highest level
of education; employee number; job code; CRD number;
all positions held; starting salary for each position;
bonus information for each position; production
numbers; production split, pool or partnership numbers;
date person went into production (if applicable); first
date with broker number; whether the employee was part
of a partnership or team (and whether the employee was
assigned a pooled production number, and, if so, the
name, race and sex of employees under the pooled
production number, the date the partnership or team was
formed and the date the partnership or team was
dissolved; and any and all terms of each partnership or
team including the respective shares held by each
member); and all licensing/registration information].

Plaintiffs' First Set of Class Requests for Production, Request No. 1. They also sought extensive information concerning compensation and training for all employees nationwide, as well as information concerning company policies, plans and guidelines for compensation and training. This is just a sample; in all, the "First Set of Requests" contained 55 separately-numbered requests, some of which had numerous subparts. Putting it mildly, the plaintiffs sought the production of volumes and volumes of documents.

Morgan Stanley served its responses and objections - a 45-page document. Morgan Stanley objected to the requests generally on the ground that they related to the class allegations, which was inappropriate, given Judge Conlon's rulings. Nevertheless, Morgan Stanley agreed:

to produce data, to the extent it exists in such form, from which [the above-described information] may be derived for all Global Wealth Management Group ("GWMG") Financial Advisor ("FA") Trainees, FAs, and producing managers in branches where plaintiffs are or were employed for the time period January 1, 2002 through and including one year after the last Plaintiff worked at such branch.

Defendant's Responses and Objections to Plaintiffs' First Class Requests for Production, Response to Request No. 1.

The parties were unable to agree on discovery, and, on April 4, 2008, the plaintiffs filed a motion to compel the production of "workforce data." It is not clear to the Court whether by "workforce data" the plaintiffs are referring to all of the discovery requested in all of the document requests included in Plaintiffs' First Set of Class Requests for Production, or whether that phrase refers to some smaller subset of documents and information. In either case, however, it appears that Morgan Stanley has already produced some "workforce data" to the plaintiffs. In particular, Morgan Stanley has produced - and the plaintiffs do not dispute that this is the case - "workforce data" for each branch where an individual plaintiff works, worked or applied for a position. The plaintiffs have indicated that this is unacceptable and that they want workforce data for all of Morgan Stanley's 450 branches.

In federal court, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). To be

4

relevant, the discovery sought need not be admissible at trial; it need only be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(1). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)(interpreting "relevance" broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case). A party's requested discovery must be tied to the particular claims at issue in the case, however. *E.g., Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *3 (N.D. Ill. April 15, 2002) (citations omitted). The Court has broad discretion in deciding whether to compel discovery and may appropriately deny it when it would oppress or unduly burden the person or entity to whom the request was made, or when the probative value of the requested discovery is minimal. *See, e.g.,* Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *White v. Money Store*, No. 96 C 5955, 1997 WL 126847, at *3 (N.D. Ill. March 18, 1997).

In resisting the motion to compel, Morgan Stanley argues that the plaintiffs' requests seek class-related discovery, which Judge Conlon has forbidden. They also argue that plaintiffs' position – that nationwide class discovery is relevant and appropriate whether the claims asserted are class claims or individual claims – is untenable and not supported in the law of

this Circuit.[2] Morgan Stanley has not challenged generally the relevance of statistical data in individual claims; rather, it objects to the notion that it should be required, in connection with individual claims, to produce statistical data for all of its 450+ branch offices.

Morgan Stanley is right not to question the relevance of the workforce data. Statistical evidence is relevant in pattern and practice disparate treatment claims. *E.g., Hazelwood School District v. United States*, 433 U.S. 299, 307-308 (1977); *Bell v. EPA*, 232 F.3d 546, 552-553 (7th Cir. 2000). Although it may be "less helpful" in individual cases, it is nonetheless "relevant in the technical sense that it 'has a tendency to make the existence of [a material] fact . . . more probable or less probable than it would be without the evidence.'" *Baylie v. Federal Reserve Bank of Chicago*, 476 F.3d 522, 524 (7th Cir. 2007)(quoting Fed. R. Evid. 401). Thus, the question is not whether Morgan Stanley should be required to produce workforce data; the question is whether it should be required to produce such data to the extent requested, i.e., on a nationwide basis.

To support their position that nationwide discovery is

---

[2]Morgan Stanley also argues that the plaintiffs failed to comply with their obligations under Rule 37.2, and that the motion to compel should be denied for this reason alone. The plaintiffs dispute this. Because the Court agrees that nationwide discovery is not appropriate, it need not decide whether the plaintiffs' meet-and-confer efforts were adequate under the rule.

appropriate, the plaintiffs cite *Holley v. Pansophic*, No. 0- C 7505, 1993 WL 436390 (N.D. Ill. Oct. 26, 1993). The plaintiffs in *Holley* – eight former managers at Pansophic (all women) – sued the company alleging sex discrimination; they filed a "sweeping complaint" claiming "systemic sexual discrimination" throughout the company. *Id.* at *1. The plaintiffs sought extensive discovery, including personnel files for all Pansophic employees holding positions that were equal in rank to, or higher than, the positions held by the plaintiffs; the company resisted, and the plaintiffs moved to compel. In the end, the Court granted the motion, holding that, given the plaintiffs' allegations of widespread discrimination against women employees throughout the company, "evidence of [the] company's *general* policy of discrimination towards a protected class is not merely relevant, but required." *Id.* at *2.

*Holley* holds little sway here for two reasons. First, the requested discovery there involved a total of 300 employees; Morgan Stanley has already produced four times that just by offering data for the relevant states and branches. The scope of the discovery and relative burdens imposed simply do not compare. But, more importantly, *Holley* involved class allegations in addition to individual claims; here, discovery on class claims has been expressly precluded.

*Balderston v. Fairbanks Morse Engine Division of Coltec*

*Industries*, 328 F.3d 309 (7th Cir. 2003), suggests that, under the circumstances of this case, the broad discovery requested by the plaintiffs should not be permitted. *Balderston*, like this case, involved allegations by individual plaintiffs (two there, 14 here) of company-wide discrimination; the plaintiffs there, like those here, sought "discovery of extensive statistical data to show a pattern or practice of discrimination." *Balderston*, 328 F.3d at 319. The court recognized that "statistical evidence can be relevant to prove a pattern or practice of discrimination," but noted that, as the Supreme Court has emphasized, it is important to look "to the proper base 'group' when making statistical comparisons" and to examine "all of the surrounding facts and circumstances which create the statistics themselves." *Id.* (citing *Hazelwood*, 433 U.S. at 308). The Seventh Circuit has cautioned that, to be considered, "the statistics must look at the same part of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications and conduct; the plaintiff and the other similarly situated employees must have shared a common supervisor; and treatment of the other employees must have occurred during the same RIF as when the plaintiff was discharged." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). Applying these principles in *Balderston*, the Seventh Circuit upheld the district court's

decision to deny the plaintiffs' motion to compel, which sought discovery of statistical evidence on a nationwide basis, but limited the discovery to employees at the supervisor level and above, and to employees who worked in the same department as the plaintiffs. *Balderston*, 328 F.3d at 320. More specifically, the Seventh Circuit held that the district court's decision to limit discovery "to the relevant corporate department, similarly situated employees, time period and decisionmakers," was not an abuse of discretion. *Id.*

Along the same lines, the Court finds that it makes sense to limit discovery - at least at this point - to workforce data relating to the branches and offices where the plaintiffs work, worked or attempted to secure employment. The Court cannot see why - and the plaintiffs have not explained why - this information is not sufficient. The allegations in the plaintiffs' complaint speak to misconduct by branch managers, and to a general failure on the part of the branch managers to allocate resources and opportunities in a racially-neutral manner. *See* Complaint, e.g., ¶¶35, 40, 41, 42, 43, 44, 46. Thus, information relating to the specific branches at issue here would seem to be the relevant domain.

Morgan Stanley represents that it agreed to produce data and documents involving all current and former Financial Advisors, Financial Advisor Trainees and producing managers in each of the

branches where the plaintiffs are or were employed, and they have agreed to do so for the period of time from January 1, 2002 through and including one year after the last plaintiff worked at such branch; they also agreed to provide applicant data and documents involving the branch where the single plaintiff-applicant applied. This seems to the Court to be imminently fair and reasonable; it provides the plaintiffs with relevant evidence concerning their claims, but does not overburden Morgan Stanley by going beyond the relevant base group. To date, the plaintiffs have not articulated why they need data from all of Morgan Stanley's 450 branches and offices; they have not explained why the data relating to the branches where the plaintiffs worked - which yields some 1,200 comparators - isn't sufficient. Absent such justification, the Court is unwilling to compel Morgan Stanley to provide data concerning every one of its 450 branches across the country. *See Sprint/United Management Co. v. Mendelsohn*, 128 S.Ct. 1140, 1147 (2008)(the question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case).

The plaintiffs suggest that the information they seek is readily available because Morgan Stanley compiled the workforce data in connection with the *Jaffe* case. First, Morgan Stanley

disputes this, and the plaintiffs' lawyers even stood before Judge Conlon last January and said that no discovery had occurred in that case. But, more to the point, just because the information was produced in another lawsuit - a class action lawsuit - does not mean that it should be produced in this lawsuit, which now involves only individual claims.

In short, because the plaintiffs have not demonstrated the probative value of the discovery they seek, the Court declines to compel the requested discovery at this time. To the extent it has not already done so, Morgan Stanley is directed to turn over workforce data for the relevant branches - the branches where the plaintiffs held positions or applied for a position. At this stage, the Court is unwilling to give the plaintiffs more - particularly in light of Judge Conlon's repeated insistence that class discovery is precluded. If, after reviewing and analyzing that data, the plaintiffs can make a credible argument for the production of the data relating to other branches, they are free to petition the Court. But, for now, the Court is not persuaded that this discovery is not being sought simply to provide the plaintiffs with leverage to force favorable settlements on the individual claims. The Court is certainly not convinced that the discovery is probative of anything relating to the individual claims; nor is the Court persuaded that any need the plaintiffs might establish for this discovery would trump the burden imposed

on Morgan Stanley in producing it.

## Conclusion

For the reasons explained above, the Court denies the Plaintiffs' Motion to Compel Production of Workforce Data [#62].

Dated: May 30, 2008

E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge